UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ERNESTO PATACSIL and
MARILYN PATACSIL,

    Plaintiffs,

  v.

WILSHIRE CREDIT CORPORATION;
ARGENT MORTGAGE COMPANY, LLC;
T.D. SERVICE COMPANY; SOUTH
COAST LOANS AND MORTGAGE,
INC.; JOHN BONAGOFSKY, JR.;
JAMES STEVEN LITSIS; DANA K.
SCHAITERER; JOHN SANDERS,

    Defendants.

No. 2:09-cv-01660-MCE-KJM

MEMORANDUM AND ORDER

----oo0oo----

Plaintiffs Ernesto Patacsil and Marilyn Patacsil ("Plaintiffs") seek monetary and injunctive relief from Defendants for claims arising under the federal Truth in Lending Act ("TILA"), California Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), the federal Real Estate Settlement Procedures Act ("RESPA"), California's Unfair competition Law ("UCL"), and California's Foreign Language Contract Act.

1

Plaintiffs also allege state law claims of negligence, breach of fiduciary duty, fraud, breach of contract, breach of implied covenant of good faith and fair dealing, and wrongful foreclosure.

Presently before the Court is a Motion by Defendant Wilshire Credit Corporation ("Defendant") to Dismiss the Second, Third, Fourth, Sixth, Seventh, Tenth, and Eleventh Claims of Plaintiffs' Second Amended Complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendant's Motion to Dismiss is granted.

## **BACKGROUND**[1]

This action arises out of activity surrounding a residential loan transaction for property located at 335 Prado Way, Stockton, County of San Joaquin, California ("Property"). In January 2005, Defendant John Sanders approached Plaintiffs representing himself as a loan officer for Defendant South Coast Loans and Mortgage, Inc. and solicited Plaintiffs to refinance their residence. Sanders told Plaintiffs that he could get them the "best deal" and the "best interest rates" on the market.

///
///
///

---

[1] The factual assertions in this section are based on the allegations in Plaintiff's Second Amended Complaint unless otherwise specified.

2

Sanders promised Plaintiffs an affordable loan with a fixed rate, however he actually sold Plaintiffs an adjustable rate loan with prepayment penalties. Sanders further promised Plaintiffs that if the loans ever became unaffordable, he would refinance them into an affordable loan.

To qualify for these loans, Sanders overstated Plaintiffs' income without Plaintiffs' knowledge or consent. Plaintiffs are native of the Phillippines and their English skills, both verbal and written, are limited. Sanders failed to provide a translator at any stage of the proceeding. Plaintiffs further allege that Sanders hid facts from Plaintiffs surrounding the transaction which prevented Plaintiffs from discovering the nature of the transaction.

On or about March 30, 2005 Plaintiffs completed the loan on the Property. The terms of the loan were memorialized in a Promissory Note, which was secured by a Deed of Trust on the Property. The Deed of Trust identified Town and Country Title Services, Inc. as Trustee, and Defendant Argent Mortgage as Lender.

Plaintiffs allege that they were not given a copy of the documents prior to closing and that at the closing, they were only given a few minutes to sign the documents. Plaintiffs further allege they were not allowed to review the documents and were told only to sign and initial the documents and that they were not provided with the required copies of a proper notice of cancellation of the transaction.

///
///

| | |
|---|---|
| 1 | Plaintiffs allege that Defendant began demanding monthly |
| 2 | payments from the Plaintiffs, but failed to give requisite notice |
| 3 | to the Plaintiffs that it acquired servicing rights. |
| 4 | On or about June 3, 2009, a Qualified Written Request |
| 5 | ("QWR") under RESPA was mailed to Defendant identifying |
| 6 | Plaintiffs, their loan, and listing their reasons for their |
| 7 | belief that the account was in error due to fraud, improper |
| 8 | charges, improper increases, and requesting specific information. |
| 9 | In addition, the QWR included a demand to rescind the loan. |
| 10 | Plaintiffs state that Defendant never properly responded to the |
| 11 | QWR. |

**STANDARD**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

///
///
///
///

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Id. at 1964-65 (internal citations and quotations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. Id. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

"Rule 8(a)(2)...requires a 'showing,' rather than a blanket assertion of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Twombly, 550 U.S. 556 n.3. A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs...have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. Nevertheless, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556.

///

///

5

When a claim for fraud is raised, Federal Rule of Civil Procedure 9(b) provides that "a party must state with particularity the circumstances constituting fraud." "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Neubronner v. Milken, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations and citations omitted). "The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." Id. at 672.

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. A court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant,...undue prejudice to the opposing party by virtue of...the amendment, [or] futility of the amendment...." Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962). Generally, leave to amend is denied only when it is clear the deficiencies of the complaint cannot be cured by amendment. DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

///
///
///
///
///
///
///
///

**ANALYSIS**

**A. California's RFDCPA**

The California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA") was enacted "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts, and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1. Plaintiffs allege that Defendant violated the RFDCPA by "using unfair and unconscionable means to collect a debt not owed to Defendant,...sending deceptive letters and making phone calls to Plaintiffs demanding payment." Further, Plaintiffs allege that Defendant "repeatedly made false reports to credit reporting agencies about Plaintiffs' credit standing, falsely stated the amount of Plaintiffs' mortgage debt, falsely stated that a debt was owed, and falsely stated Plaintiffs' payment history." In addition, the Plaintiffs state that Defendant "increased the amount of Plaintiffs' mortgage debt by stating amounts not permitted by law or contract."

However, based on the language of the statute, courts have declined to regard a residential mortgage loan as a 'debt' under the RFDCPA. See Cal. Civ. Code § 1788.2(e)-(f); Castaneda v. Saxon Mortg. Services, Inc., No. 2:09CV01124, 2009 WL 4640673, at *3 (E.D. Cal. Dec. 3, 2009) (holding that a foreclosure pursuant to a deed of trust does not constitute a debt collection under the RFDCPA); Ines v. Countrywide Home Loans, Inc., No. 08CV1267, 2008 WL 4791863, at *3 (S.D. Cal. 2008) (stating plaintiff's mortgage debt claim did not fall within the meaning of the RFDCPA);

Pittman v. Barclays Capital Real Estate, Inc., No. 09CV0241, 2009 WL 1108889, at *3 (S.D. Cal. April 24, 2009) (dismissing plaintiff's mortgage-related RDFCPA claim for failing to "invoke statutory protections").

The behavior Plaintiffs complain of arises out of or exists in connection to their residential loan mortgage. The alleged actions by Defendant, including sending letters, making phone calls and making reports, all stem from the initial residential loan mortgage. As the courts have repeatedly held, the collection of this debt does not fall under the purview of the RFDCPA.

Defendant's Motion to Dismiss Plaintiff's RFDCPA claim is granted.

**B. Negligence**

Plaintiffs allege that Defendant "owed Plaintiffs a duty of due care to determine the true identity of the party owning Plaintiffs' Mortgage Note and Deed of Trust before demanding payments from Plaintiffs." Plaintiffs allege that Defendant breached that duty when they "took payments to which they were not entitled, charged fees it was not entitled to charge, and wrongfully made or otherwise authorized negative reporting of Plaintiffs' creditworthiness to various credit bureaus." Plaintiffs allege that Defendant further had a duty to "properly respond to Plaintiffs' Qualified Written Request pursuant to 12 U.S. C. § 2605(e), and to give Plaintiffs notice of the transfer of the servicing rights to their loan pursuant to 12 U.S.C. § 2605(c)."

In order to state a cause of action for negligence, a plaintiff must allege: (1) the defendant has a legal duty to use due care; (2) the defendant breached such legal duty; (3) the defendant's breach was the proximate or legal cause of the resulting injury; and (4) damage to the plaintiff. Ladd v. County of San Mateo, 12 Cal. 4th 913, 917 (1996). The existence of a legal duty on the part of the defendant is a question of law to be determined by the court. Kentucky Fried Chicken of California, Inc. v. Superior Court, 14 Cal. 4th 814, 819 (1997); Isaacs v. Huntington Memorial Hospital, 38 Cal. 3d 112, 124 (1985). When not provided by statute, the existence of such a duty depends upon the foreseeability of the risk and a weighing of policy considerations for and against the imposition of liability. Jacoves v. United Merchandising Corp., 9 Cal. App. 4th 88, 105 (1992).

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1095-96 (1991) (affirming summary judgment in favor of defendant lending institution because defendant owed no duty to Plaintiff in conducting its loan processing procedures); see Wagner v. Benson, 101 Cal. App. 3d 27, 35 (1980) ("Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'").

///

///

However, the analysis does not stop there. Rather, California courts look to six factors in determining whether a financial institution owes a duty of care to a borrower-client. These facts are: "[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." Nymark, 231 Cal. App. 3d at 1098.

Plaintiffs allege that Defendant is a "diversified financial marketing and/or services corporations engaged primarily in residential mortgage banking and/or related business." Plaintiffs' own description indicates that Defendant is a financial institution. As such, Defendant owed no duty of care. Nor have Plaintiffs provided the Court with any statute creating a duty, or special relationship giving rise to a duty between Plaintiff and Defendant.

The Defendant's Motion to Dismiss Plaintiffs' negligence claim is granted.

**C. RESPA**

Plaintiffs allege that they sent Defendant a QWR that stated the reasons for the Plaintiffs' belief that the loan was in error and a request to rescind the loan. Plaintiffs contend Defendant violated RESPA, 12 U.S.C. § 2605(e)(2), by failing to properly respond to Plaintiffs' QWR.

RESPA requires mortgage loan servicers who receive a QWR for information relating to the servicing of their loan to provide a written response within twenty (20) days acknowledging receipt of the correspondence. 12 U.S.C. § 2605(e)(1)(A). For the purposes of the Act, a QWR is defined as "a written correspondence [] that... includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). A loan servicer has the duty to act when it receives a QWR "for information relating to the servicing of the loan." 12 U.S.C. § 2605(e)(1)(A). "Servicing means receiving any scheduled periodic payments from the borrower...and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower." Id. § 2605(i)(3).

Although Plaintiffs describe their letter as a QWR, they fail to allege any facts which qualify it as such. Plaintiffs have not alleged that they were seeking information about servicing of the loan. Plaintiffs only allege that their QWR included Plaintiffs' names, loan number, a statement for reasons for Plaintiffs' belief that the loan was in error, and a demand to rescind the loan. This alleged QWR simply relates to the origination of the loan, not any servicing errors. See Consumer Solutions REO, LLC v. Hillery, 2009 WL 2711264 at *9 (N.D. Cal. Aug. 26 2009) (finding borrower's letter to mortgage loan servicer did not qualify as a QWR, where letter simply disputed loan's validity, and not its servicing).

///

Further, Plaintiffs fail to state when Defendant violated RESPA and whether the sixty (60)-day period accorded for a timely response had lapsed. Delino v. Platinum Community Bank, 628 F. Supp. 2d 1226, 1231-1232 (S.D. Cal. 2009).

Plaintiffs have therefore failed to state a claim for violation of RESPA. Defendant's Motion to Dismiss Plaintiffs' RESPA claim is granted.

**D.   Fraud**

Plaintiffs' sixth claim is for fraud. Plaintiffs allege that Defendant "misrepresented to Plaintiffs that Defendant has the right to collect monies from Plaintiffs on its behalf or on behalf of others when Defendant had no legal right to collect."

In California the required elements of fraud are "a) misrepresentation; b) knowledge of falsity; c) intent to defraud, i.e., to induce reliance; d) justifiable reliance; and e) resulting damage." In re Estate of Young, 160 Cal. App. 4th 62, 79 (2008) (citation omitted). A claim for fraud requires a heightened pleading standard in which the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).

///
///
///

Statements of the time, place and nature of the alleged fraudulent activities are sufficient, id. at 735, provided the plaintiff sets forth "what is false or misleading about a statement and why it is false." In re GlenFed, Inc., Securities Litigation, 42 F.3d 1541, 1548 (9th Cir. 1994).

Here, that standard has not been met. Plaintiffs' complaint does not specifically allege what was false or misleading about these statements and why they are false, therefore falling short of the necessary pleading standard. Simply alleging that Defendant "misrepresented" facts is insufficient.

Plaintiffs also allege that Defendant failed to "adequately supervise, train, and direct its employees" and that Defendant "implemented policies and procedures which permitted and encouraged the conduct of its employees and agents in this case." However, the Plaintiffs fail to connect this assertion to their allegation of fraud. If the claim is based on the presumption that the "misrepresentation" conducted by Defendant's employees would amount to fraud, then it fails. As discussed, supra, the general "misconduct" described is insufficient for a claim of fraud. If, instead, the Plaintiffs are alleging that Defendant engaged in fraud by failing to supervise, train, and direct employees, then this claim also fails. Plaintiffs' complaint does not specifically allege why this conduct by Defendant amounts to fraud, therefore falling flat of the necessary pleading standard.

Defendant's Motion to Dismiss Plaintiffs' fraud claim is granted.

///

13

### E. California's UCL

California's Business and Professions Code § 17200 *et seq.*, more commonly known as California's Unfair Competition Law defines unfair competition as "any unlawful, unfair or fraudulent business act or practice." "Unlawful" practices are practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulation, or court-made." <u>Saunders v. Superior Court</u>, 27 Cal. App. 4th 832, 838-39 (1994) (citing <u>People v. McKale</u>, 25 Cal. 3d 626, 632 (1979)). To state a cause of action based on an "unlawful" business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law. <u>McKale</u>, 25 Cal. 3d at 635.

A business act or practice is "unfair" when the conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to a violation of the law, or that otherwise significantly threatens or harms competition." <u>Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.</u>, 20 Cal. 4th 163, 187 (1999). To sufficiently plead an action based on an "unfair" business act or practice, a plaintiff must allege facts showing the "unfair" nature of the conduct and that the harm caused by the conduct outweighs any benefits that the conduct may have. <u>Motors, Inc. v. Times Mirror Co.</u>, 102 Cal. App. 3d 735, 740 (1980).

///
///
///

A "fraudulent" business act or practice is one in which members of the public are likely to be deceived. Hall v. Time, Inc., 158 Cal. App. 4th 847, 849 (2008); Olsen, supra, 48 Cal. App. 4th at 618 ("does not refer to the common law tort of fraud but only requires a showing [that] members of the public 'are likely to be deceived'"). Thus, in order to state a cause of action based on a "fraudulent" business act or practice, the plaintiff must allege that consumers are likely to be deceived by the defendant's conduct. Committee on Children's Television, Inc. v. General Foods Corp., 35 Cal. 3d 197, 212 (1983).

Furthermore, a plaintiff alleging unfair business practices under § 17200 "must state with reasonable particularity the facts supporting the statutory elements of the violation. Khoury v. Maly's of California, Inc., 14 Cal. App. 4th 612, 619 (1993).

In alleging violation of the UCL, Plaintiffs incorporate by reference all prior causes of actions, however, none of those claims have been sufficiently plead to survive a motion to dismiss. Plaintiffs therefore lack a predicate "unlawful" action to underlie their UCL claim.

Similarly Plaintiffs fail to allege with reasonable particularity "unfair" or "fraudulent" behavior by Defendant. Plaintiffs assert that "unlawful, unfair, and/or fraudulent business practices" have occurred but they do not identify which specific behaviors they believe are punishable under the UCL. To the extent to which they may be referring to all alleged wrongful conduct listed in the complaint, Plaintiffs still fail to state why such behavior is "unfair" or "fraudulent" as defined by the statute.

Due to Plaintiffs' failure to sufficiently plead unlawful, unfair or fraudulent behaviors, Defendant's Motion to Dismiss Plaintiffs' UCL claim is granted.

**F.  Wrongful Foreclosure**

California Civil Code § 2924-2924i govern non-judicial foreclosures.  California courts have consistently held that the Civil Code provisions "cover every aspect" of the foreclosure process, I.E. Associates v. Safeco Title Ins. Co., 39 Cal. 3d 281, 285 (1985), and are "intended to be exhaustive," Moeller v. Lien, 25 Cal. App. 4th 822, 834 (1994).  As such, Plaintiffs' reliance on Cal. Comm. Code § 3301 is misplaced.  Pursuant to § 2924(a)(1) of the California Civil Code, a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process.  There is no requirement that the party initiating non-judicial foreclosure proceedings be in possession of the original note.  See, e.g., Candelo v. NDEX West, LLC, No. CV F 08-1916 LJO DLB, 2008 WL 5382259, *4 (E.D. Cal. Dec. 23, 2008) ("No requirement exists under statutory framework to produce the original note to initiate non-judicial foreclosure."); Putkkuri v. Recontrust Co., No. 08cv1919 WQH (AJB), 2009 WL 32567, *2 (S.D. Cal. Jan. 5, 2009) ("Production of the original note is not required to proceed with a non-judicial foreclosure.").  Furthermore, a defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure."

16

Abdallah v. United Savings Bank, 43 Cal. App. 4th 1101, 1109 (1996). Therefore, an action to set aside a foreclosure sale, unaccompanied by an offer to tender, does not state a cause of action which a court of equity recognizes. Karlsen v. American Sav. & Loan Ass'n, 15 Cal. App. 3d 112, 117 (1981). This rule extends to nonjudicial proceedings. See id.; Dimock v. Emerald Properties LLC, 81 Cal. App. 4th 868 (2000); Hauger v. Gates, 42 Cal. 2d 752 (1954). Before a Plaintiff may set aside a nonjudicial foreclosure because of irregularities in the sale, they must first tender the full amount. See Arnolds Mgmt. Corp. V. Eischen, 158 Cal. App. 3d 575, 577. The tender rule applies to "any cause of action for irregularity in the sale procedure." Abdallah v. United Savings Bank, 43 Cal. App. 4th 1101, 1009 (1996).

Plaintiffs argue that Defendant lacked standing to proceed with its non-judicial foreclosure because Defendant was not a "person entitled to enforce the security interest of the Property". Plaintiffs allege Defendant was not a beneficiary, trustee, mortgagee, assignee, or employee of the person or entity entitled to payment and as a result did not have the right to commence foreclosure proceedings. This Court finds this argument irrelevant in light of the fact that the Plaintiffs have failed to offer the requisite tender. The Plaintiffs have not accompanied such a claim with an offer of tender and therefore, they do not state a claim which a court of equity recognizes.

Defendant's Motion to Dismiss Plaintiffs' wrongful foreclosure claim is granted.

///

### G. Violation of California's Foreign Language Contract Act

Plaintiffs' tenth claim alleges a violation of California's Foreign Language Contract Act, Cal. Civ. Code § 1632. Plaintiffs' assert that they speak primarily Tagalog and have limited understanding of the English language, and thus were entitled to translations during negotiations and translations of documents pursuant to Cal. Civ. Code § 1632. California Civil Code § 1632 provides, in relevant part:

> "Any person engaged in a trade or business who negotiates primarily in Tagalog...orally or written..shall deliver to the other party to the contract or agreement and prior to the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated, which includes a translation of every term and condition of that agreement."

Cal. Civ. Code § 1632(b).

"To take advantage of this exception...Plaintiffs must allege that Defendant either acted as the real estate broker or had a principal-agent relationship with the broker who negotiated the loan." Ortiz v. Accredited Home Lenders, Inc., 639 F. Supp. 2d 1159, 1166 (S.D. Cal. July 13, 2009) (citing Alvara v. Aurora Loan Serv., Inc., 2009 WL 1689640, at 3* (N.D. Cal. June 16, 2009)). More clearly, California law requiring translation of a contract or agreement for a loan or extension of credit for use primarily for personal, family or household purposes only applies to real estate brokers, rather than to lenders and subsequent servicers. See Delino, 628 F. Supp. 2d at 1234.

///
///

Plaintiffs assert that Defendant was the loan servicer and never once mention their participation in the origination of the loan nor do they assert that a principal-agent relationship exists. Because Defendant is not alleged to have been involved in the origination of the loan, they can not be liable for disclosure violations occurring at the time of the origination.

Defendant's Motion to Dismiss Plaintiffs' California Civil Code § 1632 claim is granted.

## CONCLUSION

For the reasons set forth above, the motion of Defendant Wilshire Credit Corporation to Dismiss (Docket No. 34) the claims alleged against it in Plaintiffs' Second Amended Complaint (Docket No. 29) is GRANTED. Leave to amend is denied inasmuch as this is Plaintiff's third unsuccessful attempt to allege any viable claims against Defendant Wilshire Credit Corporation.

IT IS SO ORDERED.

Dated: February 5, 2010

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE