UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ERNESTO PATACSIL and MARILYN PATACSIL, | No. 2:09-cv-01660-MCE-KJM |
| Plaintiffs, | |
| v. | MEMORANDUM AND ORDER |
| WILSHIRE CREDIT CORPORATION; ARGENT MORTGAGE COMPANY, LLC; T.D. SERVICE COMPANY; SOUTH COAST LOANS AND MORTGAGE, INC.; JOHN BONAGOFSKY, JR.; JAMES STEVEN LITSIS; DANA K. SCHAITERER; JOHN SANDERS, | |
| Defendants. | |

Plaintiffs Ernesto Patacsil and Marilyn Patacsil
("Plaintiffs") seek monetary and injunctive relief from
Defendants for claims arising under the federal Truth in Lending
Act ("TILA"), California Rosenthal Fair Debt Collection Practices
Act ("RFDCPA"), the federal Real Estate Settlement Procedures Act
("RESPA"), California's Unfair competition Law ("UCL"), and
California's Foreign Language Contract Act.

1

1  Plaintiffs also allege state law claims of negligence, breach of
2  fiduciary duty, fraud, breach of contract, breach of implied
3  covenant of good faith and fair dealing, and wrongful
4  foreclosure.

5      Presently before the Court is a Motion by Defendant Wilshire
6  Credit Corporation ("Defendant") to Dismiss the Second, Third,
7  Fourth, Sixth, Seventh, Tenth, and Eleventh Claims of Plaintiffs'
8  Second Amended Complaint for failure to state a claim upon which
9  relief may be granted pursuant to Federal Rule of Civil Procedure
10 12(b)(6).  For the reasons set forth below, Defendant's Motion to
11 Dismiss is granted.

12

13                            **BACKGROUND**[1]

14

15      This action arises out of activity surrounding a residential
16 loan transaction for property located at 335 Prado Way, Stockton,
17 County of San Joaquin, California ("Property").  In January 2005,
18 Defendant John Sanders approached Plaintiffs representing himself
19 as a loan officer for Defendant South Coast Loans and Mortgage,
20 Inc. and solicited Plaintiffs to refinance their residence.
21 Sanders told Plaintiffs that he could get them the "best deal"
22 and the "best interest rates" on the market.

23 ///

24 ///

25 ///

26

27      [1] The factual assertions in this section are based on the
   allegations in Plaintiff's Second Amended Complaint unless
28 otherwise specified.

                                   2

1    Sanders promised Plaintiffs an affordable loan with a fixed
2  rate, however he actually sold Plaintiffs an adjustable rate loan
3  with prepayment penalties.  Sanders further promised Plaintiffs
4  that if the loans ever became unaffordable, he would refinance
5  them into an affordable loan.

6    To qualify for these loans, Sanders overstated Plaintiffs'
7  income without Plaintiffs' knowledge or consent.  Plaintiffs are
8  native of the Phillippines and their English skills, both verbal
9  and written, are limited.  Sanders failed to provide a translator
10 at any stage of the proceeding.  Plaintiffs further allege that
11 Sanders hid facts from Plaintiffs surrounding the transaction
12 which prevented Plaintiffs from discovering the nature of the
13 transaction.

14    On or about March 30, 2005 Plaintiffs completed the loan on
15 the Property.  The terms of the loan were memorialized in a
16 Promissory Note, which was secured by a Deed of Trust on the
17 Property.  The Deed of Trust identified Town and Country Title
18 Services, Inc. as Trustee, and Defendant Argent Mortgage as
19 Lender.

20    Plaintiffs allege that they were not given a copy of the
21 documents prior to closing and that at the closing, they were
22 only given a few minutes to sign the documents.  Plaintiffs
23 further allege they were not allowed to review the documents and
24 were told only to sign and initial the documents and that they
25 were not provided with the required copies of a proper notice of
26 cancellation of the transaction.
27 ///
28 ///

3

1    Plaintiffs allege that Defendant began demanding monthly
2  payments from the Plaintiffs, but failed to give requisite notice
3  to the Plaintiffs that it acquired servicing rights.

4    On or about June 3, 2009, a Qualified Written Request
5  ("QWR") under RESPA was mailed to Defendant identifying
6  Plaintiffs, their loan, and listing their reasons for their
7  belief that the account was in error due to fraud, improper
8  charges, improper increases, and requesting specific information.
9  In addition, the QWR included a demand to rescind the loan.
10 Plaintiffs state that Defendant never properly responded to the
11 QWR.

12
13                              **STANDARD**
14

15    On a motion to dismiss for failure to state a claim under
16 Rule 12(b)(6), all allegations of material fact must be accepted
17 as true and construed in the light most favorable to the
18 nonmoving party.  <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336,
19 337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and
20 plain statement of the claim showing that the pleader is entitled
21 to relief" in order to "give the defendant fair notice of what
22 the...claim is and the grounds upon which it rests."  <u>Bell Atl.</u>
23 <u>Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964 (2007) (quoting <u>Conley v.</u>
24 <u>Gibson</u>, 355 U.S. 41, 47 (1957)).
25 ///
26 ///
27 ///
28 ///

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Id. at 1964-65 (internal citations and quotations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. Id. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

"Rule 8(a)(2)...requires a 'showing,' rather than a blanket assertion of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Twombly, 550 U.S. 556 n.3. A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs...have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. Nevertheless, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556.

///

///

5

1    When a claim for fraud is raised, Federal Rule of Civil

2  Procedure 9(b) provides that "a party must state with

3  particularity the circumstances constituting fraud."  "A pleading

4  is sufficient under Rule 9(b) if it identifies the circumstances

5  constituting fraud so that the defendant can prepare an adequate

6  answer from the allegations."  Neubronner v. Milken, 6 F.3d 666,

7  671-672 (9th Cir. 1993) (internal quotations and citations

8  omitted).  "The complaint must specify such facts as the times,

9  dates, places, benefits received, and other details of the

10 alleged fraudulent activity."  Id. at 672.

11    A court granting a motion to dismiss a complaint must then

12 decide whether to grant leave to amend.  A court should "freely

13 give" leave to amend when there is no "undue delay, bad faith[,]

14 dilatory motive on the part of the movant,...undue prejudice to

15 the opposing party by virtue of...the amendment, [or] futility of

16 the amendment...."  Fed. R. Civ. P. 15(a); Foman v. Davis, 371

17 U.S. 178, 182 (1962).  Generally, leave to amend is denied only

18 when it is clear the deficiencies of the complaint cannot be

19 cured by amendment.  DeSoto v. Yellow Freight Sys., Inc., 957

20 F.2d 655, 658 (9th Cir. 1992).

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

1                        **ANALYSIS**

2    **A.   California's RFDCPA**

3

4        The California's Rosenthal Fair Debt Collection Practices

5    Act ("RFDCPA") was enacted "to prohibit debt collectors from

6    engaging in unfair or deceptive acts or practices in the

7    collection of consumer debts, and to require debtors to act

8    fairly in entering into and honoring such debts."  Cal. Civ. Code

9    § 1788.1.  Plaintiffs allege that Defendant violated the RFDCPA

10   by "using unfair and unconscionable means to collect a debt not

11   owed to Defendant,...sending deceptive letters and making phone

12   calls to Plaintiffs demanding payment."  Further, Plaintiffs

13   allege that Defendant "repeatedly made false reports to credit

14   reporting agencies about Plaintiffs' credit standing, falsely

15   stated the amount of Plaintiffs' mortgage debt, falsely stated

16   that a debt was owed, and falsely stated Plaintiffs' payment

17   history."  In addition, the Plaintiffs state that Defendant

18   "increased the amount of Plaintiffs' mortgage debt by stating

19   amounts not permitted by law or contract."

20       However, based on the language of the statute, courts have

21   declined to regard a residential mortgage loan as a 'debt' under

22   the RFDCPA.  See Cal. Civ. Code § 1788.2(e)-(f); Castaneda v.

23   Saxon Mortg. Services, Inc., No. 2:09CV01124, 2009 WL 4640673, at

24   *3 (E.D. Cal. Dec. 3, 2009) (holding that a foreclosure pursuant

25   to a deed of trust does not constitute a debt collection under the

26   RFDCPA); Ines v. Countrywide Home Loans, Inc., No. 08CV1267, 2008

27   WL 4791863, at *3 (S.D. Cal. 2008) (stating plaintiff's mortgage

28   debt claim did not fall within the meaning of the RFDCPA);

1    <u>Pittman v. Barclays Capital Real Estate, Inc.</u>, No. 09CV0241, 2009
2    WL 1108889, at *3 (S.D. Cal. April 24, 2009) (dismissing
3    plaintiff's mortgage-related RDFCPA claim for failing to "invoke
4    statutory protections").

5         The behavior Plaintiffs complain of arises out of or exists
6    in connection to their residential loan mortgage.  The alleged
7    actions by Defendant, including sending letters, making phone
8    calls and making reports, all stem from the initial residential
9    loan mortgage.  As the courts have repeatedly held, the
10   collection of this debt does not fall under the purview of the
11   RFDCPA.

12        Defendant's Motion to Dismiss Plaintiff's RFDCPA claim is
13   granted.

14

15   **B.   Negligence**

16

17        Plaintiffs allege that Defendant "owed Plaintiffs a duty of
18   due care to determine the true identity of the party owning
19   Plaintiffs' Mortgage Note and Deed of Trust before demanding
20   payments from Plaintiffs."  Plaintiffs allege that Defendant
21   breached that duty when they "took payments to which they were not
22   entitled, charged fees it was not entitled to charge, and
23   wrongfully made or otherwise authorized negative reporting of
24   Plaintiffs' creditworthiness to various credit bureaus." Plaintiffs
25   allege that Defendant further had a duty to "properly respond to
26   Plaintiffs' Qualified Written Request pursuant to 12 U.S. C.
27   § 2605(e), and to give Plaintiffs notice of the transfer of the
28   servicing rights to their loan pursuant to 12 U.S.C. § 2605(c)."

8

1    In order to state a cause of action for negligence, a

2  plaintiff must allege: (1) the defendant has a legal duty to use

3  due care; (2) the defendant breached such legal duty; (3) the

4  defendant's breach was the proximate or legal cause of the

5  resulting injury; and (4) damage to the plaintiff.  <u>Ladd v.</u>

6  <u>County of San Mateo</u>, 12 Cal. 4th 913, 917 (1996).  The existence

7  of a legal duty on the part of the defendant is a question of law

8  to be determined by the court.  <u>Kentucky Fried Chicken of</u>

9  <u>California, Inc. v. Superior Court</u>, 14 Cal. 4th 814, 819 (1997);

10 <u>Isaacs v. Huntington Memorial Hospital</u>, 38 Cal. 3d 112, 124

11 (1985).  When not provided by statute, the existence of such a

12 duty depends upon the foreseeability of the risk and a weighing

13 of policy considerations for and against the imposition of

14 liability.  <u>Jacoves v. United Merchandising Corp.</u>, 9 Cal. App.

15 4th 88, 105 (1992).

16    "[A]s a general rule, a financial institution owes no duty

17 of care to a borrower when the institution's involvement in the

18 loan transaction does not exceed the scope of its conventional

19 role as a mere lender of money."  <u>Nymark v. Heart Fed. Sav. &</u>

20 <u>Loan Ass'n</u>, 231 Cal. App. 3d 1089, 1095-96 (1991) (affirming

21 summary judgment in favor of defendant lending institution

22 because defendant owed no duty to Plaintiff in conducting its

23 loan processing procedures); <u>see</u> <u>Wagner v. Benson</u>, 101 Cal. App.

24 3d 27, 35 (1980) ("Liability to a borrower for negligence arises

25 only when the lender 'actively participates' in the financed

26 enterprise 'beyond the domain of the usual money lender.'").

27 ///

28 ///

1  However, the analysis does not stop there.  Rather, California

2  courts look to six factors in determining whether a financial

3  institution owes a duty of care to a borrower-client.  These

4  facts are: "[1] the extent to which the transaction was intended

5  to affect the plaintiff, [2] the foreseeability of harm to him,

6  [3] the degree of certainty that the plaintiff suffered injury,

7  [4] the closeness of the connection between the defendant's

8  conduct and the injury suffered, [5] the moral blame attached to

9  the defendant's conduct, and [6] the policy of preventing future

10  harm."  Nymark, 231 Cal. App. 3d at 1098.

11      Plaintiffs allege that Defendant is a "diversified financial

12  marketing and/or services corporations engaged primarily in

13  residential mortgage banking and/or related business."

14  Plaintiffs' own description indicates that Defendant is a

15  financial institution.  As such, Defendant owed no duty of care.

16  Nor have Plaintiffs provided the Court with any statute creating

17  a duty, or special relationship giving rise to a duty between

18  Plaintiff and Defendant.

19      The Defendant's Motion to Dismiss Plaintiffs' negligence

20  claim is granted.

21

22      **C.    RESPA**

23

24      Plaintiffs allege that they sent Defendant a QWR that stated

25  the reasons for the Plaintiffs' belief that the loan was in error

26  and a request to rescind the loan.  Plaintiffs contend Defendant

27  violated RESPA, 12 U.S.C. § 2605(e)(2), by failing to properly

28  respond to Plaintiffs' QWR.

RESPA requires mortgage loan servicers who receive a QWR for information relating to the servicing of their loan to provide a written response within twenty (20) days acknowledging receipt of the correspondence.  12 U.S.C. § 2605(e)(1)(A).  For the purposes of the Act, a QWR is defined as "a written correspondence [] that... includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B). A loan servicer has the duty to act when it receives a QWR "for information relating to the servicing of the loan."  12 U.S.C. § 2605(e)(1)(A).  "Servicing means receiving any scheduled periodic payments from the borrower...and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower."  Id. § 2605(i)(3).

Although Plaintiffs describe their letter as a QWR, they fail to allege any facts which qualify it as such.  Plaintiffs have not alleged that they were seeking information about servicing of the loan.  Plaintiffs only allege that their QWR included Plaintiffs' names, loan number, a statement for reasons for Plaintiffs' belief that the loan was in error, and a demand to rescind the loan.  This alleged QWR simply relates to the origination of the loan, not any servicing errors.  See Consumer Solutions REO, LLC v. Hillery, 2009 WL 2711264 at *9 (N.D. Cal. Aug. 26 2009) (finding borrower's letter to mortgage loan servicer did not qualify as a QWR, where letter simply disputed loan's validity, and not its servicing).
///

11

1    Further, Plaintiffs fail to state when Defendant violated
2  RESPA and whether the sixty (60)-day period accorded for a timely
3  response had lapsed.  <u>Delino v. Platinum Community Bank</u>, 628 F.
4  Supp. 2d 1226, 1231-1232 (S.D. Cal. 2009).
5    Plaintiffs have therefore failed to state a claim for
6  violation of RESPA.  Defendant's Motion to Dismiss Plaintiffs'
7  RESPA claim is granted.

8

9    **D.    Fraud**

10

11    Plaintiffs' sixth claim is for fraud.  Plaintiffs allege
12  that Defendant "misrepresented to Plaintiffs that Defendant has
13  the right to collect monies from Plaintiffs on its behalf or on
14  behalf of others when Defendant had no legal right to collect."
15    In California the required elements of fraud are
16  "a) misrepresentation; b) knowledge of falsity; c) intent to
17  defraud, i.e., to induce reliance; d) justifiable reliance; and
18  e) resulting damage."  <u>In re Estate of Young</u>, 160 Cal. App. 4th
19  62, 79 (2008) (citation omitted).  A claim for fraud requires a
20  heightened pleading standard in which the allegations must be
21  "specific enough to give defendants notice of the particular
22  misconduct which is alleged to constitute the fraud charged so
23  that they can defend against the charge and not just deny that
24  they have done anything wrong."  <u>Semegen v. Weidner</u>, 780 F.2d
25  727, 731 (9th Cir. 1985).
26  ///
27  ///
28  ///

12

Statements of the time, place and nature of the alleged
fraudulent activities are sufficient, id. at 735, provided the
plaintiff sets forth "what is false or misleading about a
statement and why it is false."  In re GlenFed, Inc., Securities
Litigation, 42 F.3d 1541, 1548 (9th Cir. 1994).

Here, that standard has not been met.  Plaintiffs' complaint
does not specifically allege what was false or misleading about
these statements and why they are false, therefore falling short
of the necessary pleading standard.  Simply alleging that
Defendant "misrepresented" facts is insufficient.

Plaintiffs also allege that Defendant failed to "adequately
supervise, train, and direct its employees" and that Defendant
"implemented policies and procedures which permitted and
encouraged the conduct of its employees and agents in this case."
However, the Plaintiffs fail to connect this assertion to their
allegation of fraud.  If the claim is based on the presumption
that the "misrepresentation" conducted by Defendant's employees
would amount to fraud, then it fails.  As discussed, supra, the
general "misconduct" described is insufficient for a claim of
fraud.  If, instead, the Plaintiffs are alleging that Defendant
engaged in fraud by failing to supervise, train, and direct
employees, then this claim also fails.  Plaintiffs' complaint
does not specifically allege why this conduct by Defendant
amounts to fraud, therefore falling flat of the necessary
pleading standard.

Defendant's Motion to Dismiss Plaintiffs' fraud claim is
granted.

///

13

1        **E.    California's UCL**

2

3        California's Business and Professions Code § 17200 *et seq.*,

4   more commonly known as California's Unfair Competition Law

5   defines unfair competition as "any unlawful, unfair or fraudulent

6   business act or practice."  "Unlawful" practices are practices

7   "forbidden by law, be it civil or criminal, federal, state, or

8   municipal, statutory, regulation, or court-made."  <u>Saunders v.</u>

9   <u>Superior Court</u>, 27 Cal. App. 4th 832, 838-39 (1994) (citing

10  <u>People v. McKale</u>, 25 Cal. 3d 626, 632 (1979)).  To state a cause

11  of action based on an "unlawful" business act or practice under

12  the UCL, a plaintiff must allege facts sufficient to show a

13  violation of some underlying law.  <u>McKale</u>, 25 Cal. 3d at 635.

14       A business act or practice is "unfair" when the conduct

15  "threatens an incipient violation of an antitrust law, or

16  violates the policy or spirit of one of those laws because its

17  effects are comparable to a violation of the law, or that

18  otherwise significantly threatens or harms competition."

19  <u>Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.</u>, 20 Cal.

20  4th 163, 187 (1999).  To sufficiently plead an action based on an

21  "unfair" business act or practice, a plaintiff must allege facts

22  showing the "unfair" nature of the conduct and that the harm

23  caused by the conduct outweighs any benefits that the conduct may

24  have.  <u>Motors, Inc. v. Times Mirror Co.</u>, 102 Cal. App. 3d 735,

25  740 (1980).

26  ///

27  ///

28  ///

14

1    A "fraudulent" business act or practice is one in which

2  members of the public are likely to be deceived.  <u>Hall v. Time,</u>

3  <u>Inc.</u>, 158 Cal. App. 4th 847, 849 (2008); <u>Olsen</u>, <u>supra</u>, 48 Cal.

4  App. 4th at 618 ("does not refer to the common law tort of fraud

5  but only requires a showing [that] members of the public 'are

6  likely to be deceived'").  Thus, in order to state a cause of

7  action based on a "fraudulent" business act or practice, the

8  plaintiff must allege that consumers are likely to be deceived by

9  the defendant's conduct.  <u>Committee on Children's Television,</u>

10  <u>Inc. v. General Foods Corp.</u>, 35 Cal. 3d 197, 212 (1983).

11    Furthermore, a plaintiff alleging unfair business practices

12  under § 17200 "must state with reasonable particularity the facts

13  supporting the statutory elements of the violation.  <u>Khoury v.</u>

14  <u>Maly's of California, Inc.</u>, 14 Cal. App. 4th 612, 619 (1993).

15    In alleging violation of the UCL, Plaintiffs incorporate by

16  reference all prior causes of actions, however, none of those

17  claims have been sufficiently plead to survive a motion to

18  dismiss.  Plaintiffs therefore lack a predicate "unlawful" action

19  to underlie their UCL claim.

20    Similarly Plaintiffs fail to allege with reasonable

21  particularity "unfair" or "fraudulent" behavior by Defendant.

22  Plaintiffs assert that "unlawful, unfair, and/or fraudulent

23  business practices" have occurred but they do not identify which

24  specific behaviors they believe are punishable under the UCL.  To

25  the extent to which they may be referring to <u>all</u> alleged wrongful

26  conduct listed in the complaint, Plaintiffs still fail to state

27  why such behavior is "unfair" or "fraudulent" as defined by the

28  statute.

1    Due to Plaintiffs' failure to sufficiently plead unlawful,

2    unfair or fraudulent behaviors, Defendant's Motion to Dismiss

3    Plaintiffs' UCL claim is granted.

4

5    **F.    Wrongful Foreclosure**

6

7    California Civil Code § 2924-2924i govern non-judicial

8    foreclosures.  California courts have consistently held that the

9    Civil Code provisions "cover every aspect" of the foreclosure

10   process, I.E. Associates v. Safeco Title Ins. Co., 39 Cal. 3d

11   281, 285 (1985), and are "intended to be exhaustive," Moeller v.

12   Lien, 25 Cal. App. 4th 822, 834 (1994).  As such, Plaintiffs'

13   reliance on Cal. Comm. Code § 3301 is misplaced.  Pursuant to

14   § 2924(a)(1) of the California Civil Code, a "trustee, mortgagee

15   or beneficiary or any of their authorized agents" may conduct the

16   foreclosure process.  There is no requirement that the party

17   initiating non-judicial foreclosure proceedings be in possession

18   of the original note.  See, e.g., Candelo v. NDEX West, LLC,

19   No. CV F 08-1916 LJO DLB, 2008 WL 5382259, *4 (E.D. Cal. Dec. 23,

20   2008) ("No requirement exists under statutory framework to

21   produce the original note to initiate non-judicial

22   foreclosure."); Putkkuri v. Recontrust Co., No. 08cv1919 WQH

23   (AJB), 2009 WL 32567, *2 (S.D. Cal. Jan. 5, 2009) ("Production of

24   the original note is not required to proceed with a non-judicial

25   foreclosure.").  Furthermore, a defaulted borrower is "required

26   to allege tender of the amount of [the lender's] secured

27   indebtedness in order to maintain any cause of action for

28   irregularity in the sale procedure."

1   <u>Abdallah v. United Savings Bank</u>, 43 Cal. App. 4th 1101, 1109

2   (1996).   Therefore, an action to set aside a foreclosure sale,

3   unaccompanied by an offer to tender, does not state a cause of

4   action which a court of equity recognizes.   <u>Karlsen v. American</u>

5   <u>Sav. & Loan Ass'n</u>, 15 Cal. App. 3d 112, 117 (1981).   This rule

6   extends to nonjudicial proceedings.   See <u>id</u>.; <u>Dimock v. Emerald</u>

7   <u>Properties LLC</u>, 81 Cal. App. 4th 868 (2000); <u>Hauger v. Gates</u>, 42

8   Cal. 2d 752 (1954). Before a Plaintiff may set aside a

9   nonjudicial foreclosure because of irregularities in the sale,

10  they must first tender the full amount.   See <u>Arnolds Mgmt. Corp.</u>

11  <u>V. Eischen</u>, 158 Cal. App. 3d 575, 577.   The tender rule applies

12  to "any cause of action for irregularity in the sale procedure."

13  <u>Abdallah v. United Savings Bank</u>, 43 Cal. App. 4th 1101, 1009

14  (1996).

15      Plaintiffs argue that Defendant lacked standing to proceed

16  with its non-judicial foreclosure because Defendant was not a

17  "person entitled to enforce the security interest of the

18  Property".   Plaintiffs allege Defendant was not a beneficiary,

19  trustee, mortgagee, assignee, or employee of the person or entity

20  entitled to payment and as a result did not have the right to

21  commence foreclosure proceedings.   This Court finds this argument

22  irrelevant in light of the fact that the Plaintiffs have failed

23  to offer the requisite tender.   The Plaintiffs have not

24  accompanied such a claim with an offer of tender and therefore,

25  they do not state a claim which a court of equity recognizes.

26  Defendant's Motion to Dismiss Plaintiffs' wrongful foreclosure

27  claim is granted.

28  ///

1          **G.    Violation of California's Foreign Language Contract Act**

2

3          Plaintiffs' tenth claim alleges a violation of California's

4    Foreign Language Contract Act, Cal. Civ. Code § 1632. Plaintiffs'

5    assert that they speak primarily Tagalog and have limited

6    understanding of the English language, and thus were entitled to

7    translations during negotiations and translations of documents

8    pursuant to Cal. Civ. Code § 1632.  California Civil Code § 1632

9    provides, in relevant part:

10              "Any person engaged in a trade or business who
                negotiates primarily in Tagalog...orally or
11              written..shall deliver to the other party to the
                contract or agreement and prior to the execution
12              thereof, a translation of the contract or agreement in
                the language in which the contract or agreement was
13              negotiated, which includes a translation of every term
                and condition of that agreement."
14

15   Cal. Civ. Code § 1632(b).

16        "To take advantage of this exception...Plaintiffs must

17   allege that Defendant either acted as the real estate broker or

18   had a principal-agent relationship with the broker who negotiated

19   the loan." Ortiz v. Accredited Home Lenders, Inc., 639 F. Supp.

20   2d 1159, 1166 (S.D. Cal. July 13, 2009) (citing Alvara v. Aurora

21   Loan Serv., Inc., 2009 WL 1689640, at 3* (N.D. Cal. June 16,

22   2009)).  More clearly, California law requiring translation of a

23   contract or agreement for a loan or extension of credit for use

24   primarily for personal, family or household purposes only applies

25   to real estate brokers, rather than to lenders and subsequent

26   servicers.  See Delino, 628 F. Supp. 2d at 1234.

27   ///

28   ///

                                    18

1      Plaintiffs assert that Defendant was the loan servicer and

2  never once mention their participation in the origination of the

3  loan nor do they assert that a principal-agent relationship

4  exists.  Because Defendant is not alleged to have been involved

5  in the origination of the loan, they can not be liable for

6  disclosure violations occurring at the time of the origination.

7      Defendant's Motion to Dismiss Plaintiffs' California Civil

8  Code § 1632 claim is granted.

9

10                          **CONCLUSION**

11

12      For the reasons set forth above, the motion of Defendant

13  Wilshire Credit Corporation to Dismiss (Docket No. 34) the claims

14  alleged against it in Plaintiffs' Second Amended Complaint

15  (Docket No. 29) is GRANTED.  Leave to amend is denied inasmuch as

16  this is Plaintiff's third unsuccessful attempt to allege any

17  viable claims against Defendant Wilshire Credit Corporation.

18      IT IS SO ORDERED.

19  Dated:  February 5, 2010

20  _____

21  MORRISON C. ENGLAND, JR.
    UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28